**David A. PARKER, Jr., et al., Plaintiffs,**

v.

**Lamarr Raton DAVIS, et al., Defendants.**

Civ. A. No. S 95–625.

United States District Court,
D. Maryland.

Oct. 23, 1995.

Joel J. Shugarman, Shugarman & Mehring, Baltimore, MD, for plaintiffs.

Edward M. Buxbaum, Judith C. Ensor, Whiteford, Taylor & Preston, Towson, MD, for defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This removed negligence action is before the Court on the plaintiffs' motion for partial summary judgment on the issue of liability and the defendants' cross-motion for summary judgment on the same issue. The matter has been fully briefed, and no oral hearing is necessary. Local Rule 105.6 (D.Md.).

### I. Factual Background

On November 10, 1994, plaintiff David Parker was seriously injured when he was struck by a truck owned by defendant Smithfield Packing Company and driven by defendant Lamarr Davis. The accident occurred at the intersection of Pulaski Street and West Franklin Street in Baltimore City, as Parker, who was then eight years old, was crossing West Franklin Street on his way to school.

At its intersection with Pulaski Street, West Franklin Street has four lanes of west-

bound traffic. The most northerly lane is separated from the other three lanes by a "Jersey wall" composed of concrete barriers. The "Jersey wall" does not extend into the pedestrian crosswalk. Motor traffic at the intersection is controlled by traffic lights. A "Walk/Don't Walk" signal controls pedestrian traffic across West Franklin Street.

On the day of the accident, Parker was walking from north to south at the West Franklin Street intersection. If he had completed his trip across West Franklin Street, he would have walked across the separate lane of traffic, past the "Jersey wall", and then across the remaining three westbound lanes. The defendants' truck had stopped for a red light in the separate lane to the north of the "Jersey wall". The parties agree that the truck hit Parker while Parker was in the pedestrian crosswalk, in the most northerly lane of West Franklin Street.

Ms. Lynette Sykes, Parker's aunt and legal guardian, filed this negligence action in the Circuit Court for Baltimore City, seeking a total of $5,000,000 in compensatory damages. The case was removed to this Court in March, 1995. After some discovery, the plaintiffs filed a motion for partial summary judgment on the issue of liability. In their motion, the plaintiffs allege that the material facts are undisputed and show that the defendants were negligent as a matter of law. The plaintiffs' motion is based on a version of events drawn from Parker's deposition testimony. In his deposition, Parker gave the following account of the accident:

> "I looked up at the light [for westbound traffic on West Franklin Street]. The light was red. So, I stepped down and seen the truck. So, it was coming and it started making noise. So, I went to the ["Jersey wall"] and that's when the light turned green. So, I got scared. So, I was thinking should I just sit there or run back? So, I tried to run back and I looked at it and that's when the engine went and I got hit."

Questioned about his recollections, Parker clarified that he had walked across the street to the "Jersey wall" before he heard the truck begin to make a noise, that the truck had begun to make noise after the light had changed, and that he had been hit when he ran back to the northernmost curb. Parker also testified that he saw the truck while he was in the crosswalk. According to the plaintiffs, it is undisputed both that Parker was in the pedestrian crosswalk when he was struck and that he entered the crosswalk when the defendants' truck had stopped for a red light at the intersection. Thus, the plaintiffs contend, Parker had the right of way in the crosswalk and the fact that he was hit by the defendants' truck shows that the defendants were negligent as a matter of law.

The defendants opposed the plaintiffs' motion and filed a cross-motion for summary judgment. The defendants contend that they are entitled to summary judgment even if the factual allegations set forth in the plaintiffs' summary judgment motion are taken as true. According to the defendants, the undisputed facts establish that Parker entered the pedestrian crosswalk against a "Don't Walk" signal, conduct which the defendants characterize as contributory negligence as a matter of law. The defendants produced evidence that the pedestrian signal at the intersection displayed "Don't Walk" for some fourteen seconds before the red light for westbound traffic turned to green. There is no testimony that either the traffic lights or the pedestrian control device were malfunctioning on the day of the accident.[1] Parker testified at his deposition that he could not remember whether the pedestrian control signal displayed "Walk" or "Don't Walk" when he began to cross West Franklin Street. Parker and other witnesses unanimously agreed, however, that the traffic light changed, at the latest, when Parker had crossed as far as the "Jersey wall".

Through the expert testimony of Harry Krielmeyer, Jr., a professional engineer specializing in accident reconstruction, the defense secured evidence that the standard "walk rate" used for setting stoplight timing is four feet per second. Mr. Krielmeyer

---

1. The defendants attached as Exhibit 12 to their summary judgment motion a letter from the Bureau of Transportation which explained the light sequence at the intersection and stated that no complaints were received about traffic control there on the day of the accident.

testified that "senior citizens may get down to two and a half" feet per second. The defense evidence showed that the "Jersey wall" was approximately thirteen feet from Parker's departure point on the northernmost curb. Even walking at two and a half feet per second, it would have taken Parker only 5.6 seconds to reach the "Jersey wall". Thus, the defendants conclude, when Parker entered the crosswalk, the pedestrian traffic control signal must already have begun its fourteen second flashing "Don't Walk" cycle. As earlier stated, it is the defendants' position that crossing the road against a "Don't Walk" signal was, under the circumstances of the case, contributory negligence as a matter of law.

Opposing the defendants' summary judgment motion, the plaintiffs challenge the factual basis of the defendants' argument. According to the plaintiffs, the conclusion that Parker took less than fourteen seconds to reach the "Jersey wall" is "uncited and unsupported." (Plt.Opp. at 7). The plaintiffs suggest that any calculation based upon distance and average walking speed lacks probative value without evidence showing how fast Parker actually walked on the day of the accident. The plaintiffs also allege that "Parker paused while in the crosswalk." They contend that the defendants' failure to take account of the time taken to pause creates an issue of material fact with respect to whether or not Parker entered the crosswalk against a "Don't Walk" signal. (*Ibid.*)

In addition, the plaintiffs challenge the defendants' application of the law of contributory negligence. Recognizing that contributory negligence is ordinarily a jury question, particularly when a child's contributory negligence is alleged, the plaintiffs argue that in this case, too, the issue of contributory negligence must be decided by a jury.

## II. *Summary Judgment Standards*

■ Summary judgment may be entered in a civil case if "the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled ·to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be appropriate where the record contains conflicting evidence with respect to the facts, because "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, "the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." *Thompson Everett, Inc. v. National ·Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995).

■ In considering a motion for summary judgment, a court must consider the facts and draw its inferences in the light most favorable to the party opposing the motion. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Nonetheless, such inferences "must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett*, 57 F.3d at 1323. The task of the Court is to decide whether there is a genuine issue for trial. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## III. *Factual Disputes*

Varying accounts of the accident are contained in Parker's deposition testimony, in the witness statements in the police report, in the deposition testimony of the witnesses, and in affidavits.[2] The parties recognize that

---

**2.** The defendants allege that the reports of Parker's treating neuropsychologist contain findings made in January and May, 1995, that Parker has retrograde amnesia and can remember nothing about the ten or fifteen minutes which immedi-

ately preceded the accident. (Dft.Opp. at 3, n. 2.). Although some of the medical testimony in the record before the Court is directed towards determining on which side of his body Parker was hit, suggesting that Parker himself cannot

this Court cannot enter summary judgment where there exist genuine disputes of material fact. The defendants argue, in substance, that they are entitled to summary judgment because, in addition to the evidence supplied by Mr. Krielmeyer, they rely upon only one fact, which is not in dispute—that the light for westbound traffic on West Franklin Street changed from red to green at or before the time that Parker allegedly reached the "Jersey wall". As the defendants point out, every account of the accident in the evidence before the Court, regardless of other factual discrepancies, places the light change either when Parker was crossing the street or immediately after he reached the "Jersey wall".[3] Considering in addition their uncontroverted expert testimony with respect to the light cycle, the distance to the "Jersey wall" and the speed of human perambulation, the defendants conclude that Parker must necessarily have begun to cross the street against a "Don't Walk" signal.

The plaintiffs challenge the defense expert's testimony in only one regard. They argue that a dispute of material fact exists with respect to whether or not the "Don't Walk" signal was displayed, because, they allege, Parker paused in the crosswalk and the defendants failed to take into account the probable length of the pause.

In their opposition to the defendants' summary judgment motion, the plaintiffs cite the following portion of Parker's deposition as evidence that "Parker paused while in the crosswalk, prior to reaching the "Jersey wall", to look at the color, size and shape of the Defendants' truck." (Plt.Opp. at 7). When he was deposed, Parker was asked whether he had seen the defendants' truck before the accident. (Plt.Opp., Exh. B at 38.) Parker said that he had, and was asked if he

remembered what color the truck was. (*Ibid.*) Parker responded that he saw the red part, but not the blue part. (*Ibid.*) Parker was then asked whether he saw the truck from the sidewalk, or whether he was already in the street when he noticed it. (Plt.Opp., Exh. B at 38–39.) Parker said that he was already in the street. (*Id.* at 39).

This colloquy is not evidence that Parker paused in the crosswalk to inspect the defendants' truck. On the contrary, Parker's deposition testimony, taken as a whole, is inconsistent with such an idea. Parker was questioned at length about the accident. He repeated his account of events several times. At no time did Parker suggest that he stepped into the crosswalk and "paused." Rather, he stated that he was "walking" to the barrier, and that he "went to the barrier." (Plt.Opp., Exh. B at 46, 44). Moreover, the fact that Parker saw the truck and remembered something about its color does not establish that he stopped "to look at the color, size and shape" of the truck. It is not necessary to stand and stare at something in order to become aware of its physical attributes. Indeed, the incomplete nature of Parker's recollection of the truck (he said that he saw the red part, but not the blue part) suggests that he merely noticed the truck in passing.

Nevertheless, in September, 1995, after receiving the defendants' motion for summary judgment, counsel for the plaintiffs secured an affidavit from Parker, stating that "[a]fter I stepped into the crosswalk and prior to reaching the "Jersey wall", I paused to look at the color, size and shape of the Defendants' vehicle." This *ad hoc* affidavit is insufficient to create an issue of material fact with respect to whether or not Parker

remember what happened, the defendants did not make the reports part of the record for the purposes of the summary judgment motion. This Court accepts Parker's deposition testimony as true in assessing the defendants' cross-motion for summary judgment.

3. In his deposition, Parker testified that he "went to the barrier and that's when the light turned green." (Plt.Mot.Summ.J., Exh. A at 44). Je-

rome Willis Watson, an eyewitness, told the police officer investigating the incident that the light had turned green and the truck had started to move before Parker had stepped off the sidewalk. In his deposition, however, Watson testified that Parker had stepped into the crosswalk, and "when he got barely in the middle of the truck, that is when the truck started—the light turned green.". (*Id.*, Exh. C at 28).

crossed the road against a "Don't Walk" signal.[4]

 "A genuine issue of material fact is not created where the only issue of fact is which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). To the extent that the affidavit states that Parker paused in the crosswalk for long enough to generate a material factual dispute about whether he entered the road against a "Don't Walk" signal, the affidavit is inconsistent with Parker's earlier testimony. The defendants' uncontroverted evidence was that the "Don't Walk" signal flashed for fourteen seconds before the lights changed and that Parker, walking very slowly, would have taken 5.6 seconds to reach the "Jersey wall". Assuming, in the plaintiffs' favor, that Parker stepped off the curb with a "Walk" signal and walked very slowly, nonetheless he would have had to pause in the crosswalk for at least seven seconds if, as is uncontroverted, the light changed either before or immediately after the time that Parker reached the "Jersey wall".

Such a scenario is entirely inconsistent with Parker's deposition testimony, during which Parker was asked to recount everything that he could remember about the accident, and which contained no reference to a lengthy pause in the crosswalk. Moreover, the record suggests no reason why Parker, crossing a busy street on his way to school, should have stopped in the crosswalk to assess the size, shape and color of a truck. As the Fourth Circuit has observed,

> " '[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' "

*Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984). *See also Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir.1990) (expert witness's affidavit was "in such conflict with his earlier deposition testimony that the affidavit should be disregarded as a sham issue of fact"). *Nunes v. Merrill Lynch, Pierce, Fenner & Smith*, 635 F.Supp. 1391 (D.Md.1986) (court disregarded plaintiff's statements of "fact" where those statements were contradicted by other evidence). Accordingly, this Court will disregard the portion of Parker's September, 1995 affidavit which alleges that Parker paused to study the defendants' truck. Absent the affidavit evidence, there is simply no basis from which a reasonable jury could conclude that Parker faced anything other than a "Don't Walk" signal when he entered the West Franklin Street crosswalk.

### IV. Contributory Negligence

Subsection (c) of § 21–203 of the Transportation Article of the Maryland Code provides that "[a] pedestrian may not start to cross the roadway in the direction of a 'don't walk' signal." The statute makes no distinction between flashing "Don't Walk" signals and signals which are constantly lit. *See* Md. Transp.Code Ann. § 21–203(a) (1977). The defendants contend that, under the circumstances of this case, Parker's violation of § 21–203(c) is contributory negligence as a matter of law. The defendants emphasize the deposition testimony of Parker and of his aunt, Ms. Sykes, who both stated that Parker knew that he should not start to cross the street when the "Don't Walk" signal was flashing. (Dft.Mot.Summ.J., Exhs. 4 & 5).[5] As a consequence, according to the defendants, Parker's disregard for his own safety was contributory negligence as a matter of law.

The plaintiffs argue that the issue of Parker's contributory negligence must be tried

---

4. The credibility of the affidavit is further undermined by the fact that it contains not one, but two, allegations of fact which are inconsistent with the record already before the court. The other allegation is discussed at § IV, *infra*.

5. Parker's September, 1995 affidavit contains a paragraph stating, *inter alia*, that "I knew I was not supposed to cross a street on a 'Don't Walk'

signal, but needed the assistance of another to tell me what signal was displayed." This statement is inconsistent with the earlier deposition testimony of both Parker and his aunt. Consequently, this Court disregards it. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975–976 (4th Cir.1990); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984).

to a jury. The plaintiffs point out that Parker was eight years old at the time of the accident and allege that he was dyslexic and learning disabled. Citing numerous Maryland cases, the plaintiffs conclude that, under these circumstances, a jury must decide whether Parker exercised reasonable care for his own safety. (Plt.Opp. at 3).

■ Neither side discusses Maryland law governing the effect of a party's statutory violation upon the issue of his negligence or contributory negligence. Nevertheless, such law is obviously pertinent to this case. "In Maryland, violations of a statute or ordinance are evidence of negligence but do not constitute negligence *per se.*" *Aravanis v. Eisenberg,* 237 Md. 242, 259–260, 206 A.2d 148, 158 (1964). Ordinarily, "[t]he violation of a statute may furnish evidence of negligence . . . where the person alleging negligence is within the class of persons sought to be protected, and the harm suffered is of the kind which the statute was intended, in general, to prevent." *Atlantic Mutual v. Kenney,* 323 Md. 116, 124, 591 A.2d 507, 513 (1991). *See also Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 155, 642 A.2d 219, 229 (1994). In the ordinary case, therefore, the plaintiffs' argument, that a jury should consider whether Parker's violation of the Transportation Article constituted contributory negligence under the circumstances, would be persuasive. This case, though, is not ordinary. It involves an apparent anomaly in Maryland case law which this Court must follow under the well-known rule in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), even were this Court to dispute the wisdom of the Maryland law.

■ The Court of Appeals of Maryland held in *Schweitzer v. Brewer,* 280 Md. 430, 374 A.2d 347 (1977), that a pedestrian's conduct in crossing a street against a "Don't Walk" signal in violation of § 21–203 of the Transportation Article is measured, for contributory negligence purposes, not by the usual standard of reasonableness, but by the standard set forth in the statute itself.[6] Consequently, despite the general rule, *Schweitzer* holds that the violation of this particular statute constitutes negligence as a matter of law.

The plaintiff in *Schweitzer* appealed a verdict for the defense. She argued, *inter alia,* that the trial court had erred in giving the following instruction to the jury:

> ". . . [I]f the sign was "Don't Walk" at that time, then the plaintiff, in walking against that sign, was in violation of the law. If you find that such a violation directly caused or contributed to causing her injury, then the plaintiff cannot recover and your verdict must be in favor of the defendant."

*Schweitzer,* 280 Md. at 436, 374 A.2d at 351. The plaintiff argued that the instruction improperly precluded the jury from considering the appropriate standard for contributory negligence, namely, conformity to the behavior of the reasonably prudent person. The Court of Appeals rejected the argument on the ground that

> "[t]he general rule regarding the standard of conduct applied under our decisions to measure contributory negligence does not supersede a prescription of conduct by the legislature. As we have indicated, what governs is the legislature's intention regarding a person who has partially completed his crossing while the 'Don't Walk' signal is showing, not necessarily what a 'reasonably prudent' person would do under such circumstances."

*Schweitzer v. Brewer,* 280 Md. at 440, 374 A.2d at 353. Thus, according to the Court of Appeals, the statutory standard of care set forth in § 21–203 of the Transportation Article is also the standard of care for negligence and contributory negligence purposes, where

---

**6.** At the time of the *Schweitzer* decision, the statute was codified at § 11–203 of the Maryland Vehicle Law.

The provision of the statute at issue in *Schweitzer* was the requirement, now codified at § 21–203(e) of the Transportation Article, that a pedestrian who has partially completed a crossing on a "Walk" signal must "proceed without delay to a sidewalk or safety island" if the "Don't Walk" signal is shown. It seems clear that the principles set forth in *Schweitzer* apply, *a fortiori,* to the statutory prohibition in § 21–203(c) upon a pedestrian's *entering* the crosswalk against a "Don't Walk" signal.

the alleged negligence involves disobeying a "Walk/Don't Walk" signal.

 In the present case, *Schweitzer* requires this Court to hold that Parker's conduct in crossing against a "Don't Walk" signal was contributory negligence as a matter of law. There is no question that his conduct in doing so was, as a matter of law, a proximate cause of his injuries. The factors that might indicate that an eight year old child acted reasonably even though he violated the Transportation Article, notably his age, intelligence and experience, are irrelevant to the statutory standard of conduct.[7] As the Court of Appeals put it, "what governs is the legislature's intention regarding a person who has partially completed his crossing while the 'Don't Walk' signal is showing, not necessarily what a 'reasonably prudent' person would do under such circumstances." *Schweitzer v. Brewer,* 280 Md. at 440, 374 A.2d at 351. And, as the numerous cases cited by the parties demonstrate, an eight year old child is capable of contributory negligence in Maryland. Consequently, there is no issue of material fact for a jury and the defendants are clearly entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

### V. Conclusion

For the foregoing reason, the plaintiffs' motion for partial summary judgment will be denied. The defendants' motion for summary judgment will be granted. An appropriate order will be entered separately.

### ORDER AND JUDGMENT

This Court having considered the Plaintiffs' Motion for Partial Summary Judgment, the Defendants' Motion for Summary Judgment and the parties' oppositions and replies thereto, for the reasons set forth in the Memorandum Opinion of even date, it is, by the Court, this 23d day of October, 1995, ORDERED AND ADJUDGED:

1. That the Plaintiffs' Motion for Partial Summary Judgment BE, and hereby IS, DENIED;

2. That the Defendants' Motion for Summary Judgment BE, and hereby IS, GRANTED;

3. That judgment BE, and hereby IS ENTERED in favor of the Defendants, Lamarr Raton Davis, *et. al.*, and against the Plaintiffs, David A. Parker, Jr., *et al.*

---

**7.** This regulatory statute plainly applies to Parker, despite his age. Even Maryland's criminal law is applicable to children, to the extent that they are capable of forming the intent necessary for the commission of the offense. *See* Md.Cts & Jud.Proc.Code Ann. § 3–801(k) (1995); *In re William A.,* 313 Md. 690, 548 A.2d 130 (1988).