187 F.3d 422 (4th Cir. 1999)
 LIDY J. HARTLEY, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INCORPORATED; SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION; TOWN OF ALLENDALE, SOUTH CAROLINA, Defendants-Appellees.
LIDY J. HARTLEY, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INCORPORATED; SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION; TOWN OF ALLENDALE, SOUTH CAROLINA, Defendants-Appellees.
 No. 98-2742 No. 99-1210 (CA-98-1396-1-6).
 UNITED STATES COURT OF APPEALS, FOR THE FOURTH CIRCUIT.
 Argued: June 8, 1999.
Decided: August 4, 1999.
 
 Appeals from the United States District Court for the District of South Carolina, at Aiken.
 Charles E. Simons, Jr., Senior District Judge.
 COUNSEL ARGUED: John E. Parker, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A., Hampton, South Carolina, for Appellant. John Arthur Davidson, FULCHER, HAGLER, REED, HANKS & HARPER, L.L.P., Augusta, Georgia, for Appellees. ON BRIEF: Ronnie L. Crosby, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A., Hampton, South Carolina; H. Woodrow Gooding, GOODING & GOODING, Allendale, South Carolina, for Appellant. L. Dean Best, FULCHER, HAGLER, REED, HANKS & HARPER, L.L.P., Augusta, Georgia; Pete Kulmala, HARVEY & KULMALA, Barnwell, South Carolina, for Appellees.
 Before WILKINSON, Chief Judge, and NIEMEYER and KING, Circuit Judges.
 Reversed and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge King joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 A South Carolina citizen filed a tort action in South Carolina state court against a Virginia railroad corporation and two South Carolina government entities. The railroad removed the case to federal court on diversity grounds, claiming that the government defendants were fraudulently joined. The district court denied plaintiff's motion to remand the case to state court. Because there is at least some possibility that plaintiff will recover against the government defendants, we reverse.
 
 I.
 
 2
 Lidy J. Hartley is a South Carolina citizen whose automobile collided with a train at an Allendale, South Carolina railroad crossing in July 1997. She filed suit in the Allendale County Court of Common Pleas against CSX Transportation, Inc. (CSX), the South Carolina Department of Transportation (SCDOT), and the Town of Allendale, South Carolina (Town). Hartley alleged, among other things, that the SCDOT was negligent in maintaining an unsafe crossing, in failing to inspect the crossing adequately, and in failing to maintain proper markings on the roadway near the crossing. She also alleged that the Town was negligent in maintaining its property and in failing to warn the public of the obstructed view at the crossing.
 
 
 3
 CSX removed the case to the United States District Court for the District of South Carolina on the basis of diversity of citizenship. With the government defendants joined, there is incomplete diversity between plaintiff and defendants, and federal jurisdiction will not attach. On the other hand, if the government defendants are dismissed, then diversity jurisdiction will lie. CSX contended that the SCDOT and the Town were sham defendants that Hartley had named solely for the purpose of defeating diversity.
 
 
 4
 Hartley filed a motion to remand the case to state court on the ground that the district court lacked subject matter jurisdiction. The district court denied the motion, holding that South Carolina's public duty rule precluded Hartley's claims against the SCDOT and the Town. Hartley then filed this interlocutory appeal.
 
 II.
 
 5
 CSX argues that diversity jurisdiction exists because the SCDOT and the Town are not proper defendants in this action. The district court agreed, holding that the government defendants were fraudulently joined because they could not be liable as a matter of law under the public duty rule. That rule provides that "public officials are generally not liable to individuals for their negligence in discharging public duties because the duty is owed to the public at large rather than to anyone individually." Wells v. City of Lynchburg, 501 S.E.2d 746, 751-52 (S.C. Ct. App. 1998).
 
 
 6
 We disagree with the district court. To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that"there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (internal quotation marks omitted). CSX does not allege any bad faith in pleading, so the only inquiry is whether Hartley has any possibility of recovery.
 
 
 7
 The party alleging fraudulent joinder bears a heavy burden -it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. Id. at 232-33. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See, e.g., Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992) (inquiry into validity of complaint is more searching under Rule 12(b)(6) than when party claims fraudulent joinder).
 
 
 8
 CSX cannot meet this burden. The public duty rule does not preclude all possibility of recovery here. South Carolina law prescribes a six-part test for determining whether the public duty rule applies. Wells, 501 S.E.2d at 752. This test requires the court to ascertain the purposes of the statute; whether the statute imposes a duty on a specific public officer; the class protected by the statute; the membership of the plaintiff in that class; the public officer's state of mind concerning the likelihood of harm to members of the class if he fails in his duty; and the nature of the officer's authority. Id.
 
 
 9
 No South Carolina case has squarely held that the public duty rule forecloses Hartley's claims. Further, it is unclear whether a state court would apply the rule to her claims because the six-part test requires a judgment call at every turn. The presence or absence of each element often depends on several variables and may require factual investigation. See, e.g., Bellamy v. Brown, 408 S.E.2d 219, 221 (S.C. 1991) (public duty rule inquiry requires "applying this test to the facts of [the] case" (emphasis added)); Jensen v. Anderson County Dep't of Soc. Servs., 403 S.E.2d 615, 617-19 (S.C. 1991) (endorsing lower court's findings that, inter alia, considered report received by social worker and social worker's personal observations in determining foreseeability of harm). These judgment calls may go either way. Thus, we cannot say with certainty that a South Carolina state court would find Hartley's claims barred by the rule.
 
 
 10
 In fact, the district court's own characterization of this case indicates its uncertainty as to the possibility of recovery. The district court described its application of the public duty rule in these circumstances as "a novel issue" and noted that "other courts may have a differing opinion of this matter." Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly "novel" issue such as this cannot be the basis for finding fraudulent joinder. The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery.
 
 
 11
 Further, courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." Marshall, 6 F.3d at 232. The district court in this case was sufficiently doubtful about the propriety of removal that it certified this interlocutory appeal. The district court instead should have resolved its doubts in favor of remanding the case to state court.
 
 
 12
 CSX contends that even if the application of the public duty rule presents an arguable question, Hartley still cannot hope to recover against the public defendants in court. We cannot say, however, that Hartley has no chance of establishing the facts necessary to support her tort claims. For example, she claims that the SCDOT was required by its own manual to place pavement markings in advance of the railroad crossing and that the absence of such markings was a proximate cause of her injuries. CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.
 
 
 13
 In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing joinder of the public defendants is proper in this case because courts should minimize threshold litigation over jurisdiction. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464 n.13 (1980) ("Jurisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources." (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
 
 
 14
 The district court erred by delving too far into the merits in deciding a jurisdictional question. The district court should not have made its own determination concerning the novel application of the public duty rule to Hartley's claims. It also incorrectly placed the burden on Hartley to show that her claims may succeed rather than requiring CSX to negate all possibility of recovery. The issues that the district court attempted to resolve are properly left to the state court for later stages of litigation.
 
 III.
 
 15
 We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. Hartley's claims may not succeed ultimately, but ultimate success is not required to defeat removal. Marshall , 6 F.3d at 233. Rather, there need be only a slight possibility of a right to relief. Id. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.
 
 
 16
 We therefore reverse and remand with directions to remand this case to state court.
 
 
 17
 REVERSED AND REMANDED.