Kevin LIU, Individually and as next friend of Nicholas Liu; and Mache Liu, Individually and as next friend of Nicholas Liu, Plaintiffs,

v.

AVENTIS PASTEUR, INC., Individually and as successor-in-interest to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; et al., Defendants.

No. A–02–CA–395–SS.

United States District Court, W.D. Texas, Austin Division.

Aug. 23, 2002.

Charles S. Siegel, Waters & Kraus, LLP, Dallas, TX, Scott M. Hendler, Lowell Brickman, The Hendler Law Firm, P.C., Austin, TX, for Kevin Liu, Mache Liu, Individually and as Next Friend of Nicholas Liu, plaintiffs.

Rebecca Jo Reser, Ray, McChristian & Jeans, San Antonio, TX, Brian D. Metcalf, Ray, McChristian & Jeans, San Antonio, TX, Catherine A. Lemon, Faegre & Benson, LLP, Denver, CO, Marsha M. Piccone, Kimberley P. Cronin, Faegre & Benson, LLP, Denver, CO, for Aventis Pasteur, Inc., defendant.

John R. Gilbert, Gilbert & Gilbert, P.C., Angleton, TX, Laurence E. Boyd, Angleton, TX, Lawrence P. Hampton, Angleton, TX, for Dow Chemical Co., defendant.

Erik V. Larson, Sandra L. Phillips, Diana L. Panian, Shook Hardy & Bacon, LLP, Houston, TX, Deborah A. Moeller, Jeffery A. Kruse, Shook Hardy & Bacon, LLP, Kansas City, MI, for Eli Lilly & Co., defendant.

Marc A. Sheiness, Sheiness, Scott, Grossman & Cohn, LLP, Houston, TX, for RM Industries, Inc., defendant.

Maurice Delaney, GDL International, Inc., St. Joseph, MO, for GDL Intern., Inc.

Stephanie A. Smith, Fulbright & Jaworski, Austin, TX, Barclay A. Manley, Fulbright & Jaworsky, LLP, Houston, TX, for GlaxoSmithKline, defendant.

Richard L. Josephson, Baker & Botts, LLP, Houston, TX, Paul R. Elliott, Houston, TX, Douglas B. Roberson, Baker Botts LLP, Houston, TX, for Merck & Co., Inc., defendant.

David M. MacDonald, McCauley, MacDonald et al., Dallas, TX, Jennifer Liebhauser, Sudie Thompson, McCauley MacDonald & Devin, Dallas, TX, for Sigma-Aldrich Corp., defendant.

John A. Scully, Cooper & Scully, Dallas, TX, Marcos A. Adrogue, Cooper & Scully, PC, Houston, TX, for Spectrum Chemical Mfg., defendant.

Michael R. Klatt, Randall L. Christian, Susan E. Burnett, Clark, Thomas & Winters, Austin, TX, Daniel J. Thomasch, Orrick, Herrington & Sutcliffe, L.L.P., New York, NY, for Wyeth, defendant.

### ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 16th day of August 2002 the Court called the above-styled cause for hearing, and the parties appeared through counsel of record. Before the Court are the Vaccine Manufacturers' 12(b) Motion to Dismiss and Alternative Motion to Stay [# 8], Plaintiffs' response in opposition thereto [# 16] and the Vaccine Manufacturers' reply [# 22]; Dow Chemical Company's Motion to Dismiss and Motion for Summary Judgment [# 41]; Spectrum Laboratory Product, Inc's Motion to Dismiss [# 10]; Sigma–Aldrich Corporation's Motion to Dismiss [# 3] and memorandum in support thereof [# 30] and Plaintiffs' response in opposition thereto [# 14]; Sigma–Aldrich's Alternative Motion to Stay [# 31], and Eli Lilly's Amended Motion to Dismiss [# 49] and Plaintiffs' response [# 15]. Having considered the motions and responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Kevin Liu and Mache Liu, are Texas residents and the parents of Nicholas Liu, who is approximately four

years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear in this lawsuit as individuals and as next friend of Nicholas Liu. *Id.* at ¶ 5. The plaintiffs contend their son suffered neurological damage when he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him during the first two years of his life. *Id.* at ¶¶ 24–26. Nicholas received the vaccines between May 20, 1998 and July 23, 1999. *Id.* at ¶ 24.

On May 30, 2002, the plaintiffs filed this lawsuit in the 353rd Judicial District Court of Travis County, Texas. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *See* First Amended Petition. As an alternative theory of liability and causation, the plaintiffs allege Merck & Co., Inc's Measles, Mumps & Rubella ("MMR") vaccine caused their injuries. *Id.* at ¶ 72. The plaintiffs seek compensatory damages for expenditures necessitated by Nicholas Liu's injuries, Nicholas' pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress, the parents' loss of consortium, and the plaintiffs' lost services. *Id.* at 17. Defendant Aventis Pasteur Inc., having obtained consent of all other served defendants,[1] removed the case to this Court on June 21, 2002 on the basis of diversity and federal question jurisdiction. *See* Notice of Removal [# 1].

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in

the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa–11(a)(2)(A). Defendants Spectrum Laboratory Products, Inc. ("Spectrum") has filed a motion to dismiss on the same basis. Defendants Eli Lilly and Company ("Eli Lilly"), Dow Chemical Company ("Dow"), Sigma–Aldrich Corporation and Sigma–Aldrich, Inc. have filed motions to dismiss and for summary judgment arguing they did not manufacture the vaccines or thimerosal that caused Nicholas Liu's injuries and, therefore, cannot be held liable.

### Analysis

#### I. The Vaccine Act's Requirements

■ The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa–11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R.Rep. No. 99–908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against

---

**1.** The record does not include a consent form signed by defendant Taylor Medical. However, the record does not establish Taylor Medical was ever served, and it has not filed an answer.

vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa–11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa–11(a)(1) & 300aa–12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa–11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Nicholas Liu's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa–33(5). The plaintiffs contend Nicholas Liu's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant ... intentionally added to such vaccine." 42 U.S.C. § 300aa–33(5).[2] The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

■ The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[3] On the contrary, it appears every federal court to have ruled on the issue has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g.*, *Strauss v. American Home Prod. Corp., et al.*, 208 F.Supp.2d 711 (S.D.Tex.2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G–02–179 (S.D.Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D.Tex.2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[4] Indeed, the HHS's determination that thimerosal is a component of vaccines,[5] not an adulterant, comports with common sense, since at

---

**2.** The plaintiffs alternative theory of liability and causation, that Merck's Measles, Mumps and Rubella ("MMR") vaccine caused Nicholas Liu's injuries, does not involve thimerosal and is blatantly a vaccine-related claim that must first be filed in Vaccine Court.

**3.** The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

**4.** While the HHS's position is official, in that it is posted on the HHS web site and HHS

has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, the HHS's official position holds persuasive authority.

**5.** The HHS regulations for general biological products standards, it includes "preservatives" in the category of "constituent materials," indicating its view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

the time Nicholas Liu received the vaccines it was impossible to get the vaccines without thimerosal.

■ Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines or the MMR vaccination, or a combination of the two, caused neuro-developmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order # 1"), at 1–2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins v. American Home Prod. Corp.,* Cause No. 3:01–CV–979LN (S.D.Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order # 1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Nicholas Liu's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Nicholas Liu without prejudice to refiling after they have exhausted the requirements under the Vaccine Act.

## II. Claims against Non–Vaccine–Manufacturers

Eli Lilly and Dow move to dismiss the plaintiffs' claims against them or, in the alternative, for summary judgment because they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Nicholas Liu's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman [# 9], at 1–2. Dow states it has not manufactured vaccines since 1978 and its licenses to manufacture vaccines were revoked by that time. *See* Dow's Motion to Dismiss, at 3–4. Sigma–Aldrich Corporation and Sigma–Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

■ These defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against these defendants as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of some defendants' substantive defenses would require a period of discovery allowing the plaintiffs to investigate the defendants' contentions. The Court will not allow the plaintiffs to conduct discovery on some defendants during the pendency of the minor's claims under the Vaccine Act against other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plain-

tiffs have complied with the Vaccine Act. *See* H.R.Rep. No. 99–908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs—including attorneys' fees and court payments—are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Nicholas Liu's claims against all defendants rather than allow discovery on some defendants.

### III. Kevin Liu and Mache Liu's Individual Claims

 Kevin and Mache Liu bring claims individually and as next friend of Nicholas Liu. Individually, they seek recovery for all past and future costs associated with Nicholas' injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa–11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa–11(b)(1)(A) & 300aa–11(c)(1)(A). Thus, Kevin and Mache Liu can only bring their claims as next friend of Nicholas, not their individual claims, in the Court of Federal Claims.

 The defendants move to dismiss Kevin and Mache Liu's individual claims for damages because they are derivative of Nicholas Liu's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Nicholas' claims in the Court of Federal Claims.[6] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.,* 204 F.3d 647, 649 (5th Cir.2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728–29 (5th Cir.1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kevin and Mache Liu's individual causes of action against all defendants until Nicholas' claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [# 8] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 8] is

---

6. The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa–16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC & REM. CODE § 16.001.

GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Sigma–Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [# 3] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [# 31] is GRANTED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratories' Motion to Dismiss [# 10] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss [# 49] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that The Dow Chemical Company's Motion to Dismiss [# 41] is GRANTED IN PART as to the claims of Nicholas Liu to be presented in the Court of Federal Claims, and DENIED IN PART as to Kevin Liu and Mache Liu's individual causes of action;

IT IS FURTHER ORDERED that the Defendants' Unopposed Motion for Stay of Scheduling Order, Initial Disclosures, and Discovery Pending Resolution of Defendants' Motion to Dismiss [# 40] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Nicholas Liu against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on April 23, 2003 informing the Court of the status of their petition, if any, filed on behalf of Nicholas Liu in the Court of Federal Claims.